UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20473-CIV-SEITZ/O'SULLIVAN

CLOSED CIVIL CASE

MARION H. KNIGHT, JR.,

    Plaintiff,

v.

PHILIPS SOUTH BEACH, LLC., *et al.*,

    Defendants.
_____/

### ORDER GRANTING DEFENDANTS MORGANS HOTELS GROUP MANAGEMENT, LLC AND PHILIPS SOUTH BEACH, LLC'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS KANYE WEST AND GETTING OUT OUR DREAMS, INC.'S MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants Philips South Beach, LLC and Morgans Hotels Group Management, LLC, Kanye Omari West and Getting Out Our Dreams, Inc.'s motions for summary judgment [DE 66, 68, 69, 70]. Plaintiff, who was shot by an unknown person while attending a private party in Miami Beach, Florida, has sued the hosts of the party as well as the property management company, alleging that they were negligent in failing to provide adequate security to prevent the criminal actions of a third-party.[1]

Framing Plaintiff's claim in the light most favorable to Plaintiff, the Defendants created a foreseeable zone of risk by inviting rap and hip hop artists – whom Plaintiff claims are known to be gang members and violent criminals that carry firearms – to a party without implementing heightened security measures. Furthermore, but for the Defendants' allegedly inadequate security, including the failure to use metal detectors at the entrance, there would not have been a firearm present, which discharged and caused Plaintiff injury. The Court has carefully reviewed the record and parties' papers. Because Plaintiff has not presented any evidence that would allow a reasonable juror to conclude that the shooting was foreseeable, as a matter of law, judgment must be entered in favor of the Defendants.

---

[1] Plaintiff also sued for conversion, claiming he lost a fifteen (15) carat diamond earring that he was wearing when he was shot, and which he believes was taken by an "employee" of one of the Defendants, although he is not sure which Defendant. Plaintiff agrees there is no record evidence to support his claim for conversion and therefore concedes that summary judgment should be entered in favor of Defendants on Count II of the Amended Complaint. [DE 77 at 1; DE 78 at 11]. Therefore, this Order addresses only Count I of the Amended Complaint for negligent security.

I.  **BACKGROUND**

The record evidence viewed in the light most favorable to Plaintiff reflects the following facts: On August 28, 2005, Plaintiff Marion "Suge" Knight was shot in the leg while attending a private party ("Party") at the Shore Club Hotel in Miami Beach, Florida, hosted by Defendants Kanye West ("West"), a recording artist, and West's record label Getting Out Our Dreams, Inc. ("G.O.O.D."). [DE 1 ¶ 25]. The Party was held in advance of MTV's Video Music Awards, held in Miami, Florida. [DE 68 at 2]. The Party was "high brow" and included "Super VIPs" and "big time celebrities." [DE 67 ¶ 11; DE 80 at 8].

Defendants Philips South Beach, LLC and Morgans Hotels Group Management, LLC ("Hotel Defendants") employed twenty-nine (29) security guards to roam the Shore Club Hotel during the Party. [DE 67 ¶ 5]. Additionally, public relations personnel from G.O.O.D. were at various checkpoints throughout the Shore Club Hotel to validate credentials of prospective guests. [Id. ¶ 8]. Once a prospective guest's identity was corroborated, or if discretion was used to accommodate a non-listed individual, the guest would be permitted to enter the Shore Club Hotel. [Id. ¶ 9].

Knight was not on the guest list for the Party. However, he is a well-known music producer and a founder of the Death Row Records label, and was invited to attend the Party by an unnamed representative of West. [Id., Ex. I at 7-8]. The Hotel Defendants were not aware that Knight was going to attend the Party. [DE 67 ¶ 11]. When Knight arrived at the entrance,[2] a representative of West, whom Knight thinks might be named Moe, radioed West's people; West's people told Moe that Plaintiff should "come right on in." [DE 80, Ex. B at 60:14-61:6]. Moe told Knight that "no guns, no knives, no bombs" are allowed in the Party and then Moe patted down Knight. [Id. at 61:7-17].

Upon entering the Shore Club Hotel, Knight was interviewed and photographed. [Id. at 61:16-19]. Knight then sat down at a table with Hulk Hogan and Mr. Hogan's family and ate some food. [Id. at 71:17-20]. An unnamed person who works for West saw Knight and went to get West to talk with Knight. [Id. at 70:3-8]. Then

---

[2] Knight "was accompanied by two (2) girls which I can't remember their names." [DE 67, Ex. I at 8]. If depositions of the women who accompanied Plaintiff were taken, they are not part of the record evidence.

"somebody else that works there" told Knight there was a table ready for him, and escorted Knight to the table. [*Id.*] On his way to the table, Knight spoke with West, whom he claims had five (5) of his own personal security guards.³ [DE 80 at 4]. Knight claims West stated:

> this is my party, it's cool as shit. They getting your table right there. You get what you want. They got guys on you. We don't got – ain't nobody got their posses, their crews. Some people do. We cut that down. We've got personal security here for everybody. It's smooth. Jessica Alba's right here, so-and-so right here.

[DE 80, Ex. C at 281:21-282:3].

Before Knight was able to sit down at his table he was shot in the leg. The record reflects that the shooter was never identified. [DE 78 at 4]. Except to exclude that the wound was self-inflicted, the police could not determine whether the shooting was intentional or accidental. [*Id.*] The record does not contain any evidence of prior shootings at the Shore Club Hotel, much less shootings in the neighborhood.⁴ The guest list is not in the record evidence. Nor is there evidence of criminal history of any of the guests or of prior disturbances at West's previous parties. "[T]he only fact that we know is that he was shot while he was attending that party." [DE 67, Ex. F "Deposition of Sergeant Daniel Morgalo" at 72:19-20].

Knight has sued West, G.O.O.D. and the Hotel Defendants alleging negligent security. The parties conducted over one year of discovery, which was extended once by the Court. Nevertheless, the parties have provided only page excerpts from the depositions of four (4) persons in attendance at the party and two (2) police officers who investigated the shooting. Furthermore, Plaintiff's response to the Defendants' statement of facts not in dispute consists mainly of citations to his Amended Complaint. Simply put, there is scant evidence before the Court.

---

³An example of Plaintiff's lack of admissible evidence is reflected in the proof he provides that West had five (5) security guards with him. The proof is a question Plaintiff's counsel asked Maurice Barrero, a security guard of the Hotel Defendants: "[d]o you know whether Kanye West had five security guards there, his own personal security that night?" The answer was "No." [DE 79, Ex. B at 116:21-117:2]. Statements by counsel are not evidence and the witness's lack of knowledge does not establish counsel's statement as fact.

⁴In fact, Plaintiff's expert concedes that the Shore Club Hotel is located in a low crime business area, and is a high-end, celebrity destination. [DE 79, Ex. J at 2].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)); *see also Celotex*, 477 U.S. at 324. A court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

## III. DISCUSSION

The first Count in Knight's Amended Complaint is for premises liability. Knight alleges that all Defendants had a duty to maintain the Shore Club Hotel in a reasonably safe condition for invitees – West and G.O.O.D. because they validated guest credentials,[5] and the Hotel Defendants because they provided security. Knight alleges that as a direct and proximate result of the Defendants' negligence, he was shot when a firearm brought into a place where alcohol is served – a misdemeanor crime under Florida Statutes section 790.06(12) – discharged either intentionally or accidentally. Defendants argue that the shooting was not foreseeable and therefore they had no duty to prevent against a criminal act[6] of violence of a third-party.

---

[5] Although it is unclear whether West or G.O.O.D. owed any duty to Knight based upon a special relationship or a voluntary undertaking, on these motions for summary judgment, the Court will assume that a duty was owed to protect Knight, as an invitee, from known risks of harm.

[6] Defendants also argue they are entitled to summary judgment because Plaintiff has alleged, but cannot prove, that the shooting was an intentional criminal act. Plaintiff relies on a Florida statute that criminalizes possession of a firearm in a place that serves alcohol to establish that the person in possession of the firearm that discharged was engaged

### A.  *The Law on the Duty to Protect an Invitee from the Criminal Act of a Third-party*

In Florida, the proprietor of a business owes a duty to its invitees to take reasonable security precautions for their benefit.[7] *See Walmart Stores, Inc. v. Caruso*, 884 So.2d 102, 105 (Fla. 4th DCA 2004); *Foster v. Po Folks, Inc.*, 674 So.2d 843, 844-45 (Fla. 5th DCA 1996). Although not an insurer of the safety of invitees, that duty includes protecting invitees from foreseeable criminal attacks. *See Stevens v. Jefferson*, 436 So.2d 33, 34 (Fla. 1983). Accordingly, liability to invitees injured from third-party criminal acts is not based simply upon whether a criminal act occurred, but whether a duty exists to take measures to guard against it; if so, whether the failure to take certain security precautions breached that duty; and, if the breach was a legal cause of the injury.

The threshold issue is whether Defendants had reason to anticipate third-party criminal activity on the premises; if not, there is no need to determine whether they took adequate measures to guard against the criminal act. The Defendants argue they are entitled to summary judgment on Plaintiff's claim for negligent security because there is no proof that the Defendants had actual or constructive knowledge of prior, similar criminal acts committed against other business invitees at the Shore Club Hotel, and therefore the attack on Plaintiff was not foreseeable. In other words, because the Defendants had no reason to know that an invitee might be physically assaulted in the fashion Plaintiff was attacked, they had no obligation to protect against such criminal conduct.

In his response, Knight argues that the issue of foreseeability is a question of fact for a jury. [DE 80 at 9]. While foreseeability remains highly relevant to the existence and scope of any duty predicated on a "special

---

in a criminal act. While it is true that the evidence is inconclusive as to whether the shooting was intentional or accidental, based upon what the parties have argued, the Court cannot conclude that as a matter of law a criminal act did not occur. For purposes of these motions, the Court will provide Plaintiff with every benefit of the doubt and assume the shooting was an intentional criminal act.

[7]This is a diversity action. Under Florida law, the elements of negligence are that: (1) the Defendants owed a legal duty of care to the Plaintiff; (2) the Defendants breached that duty of care; (3) the Defendants' breach caused Plaintiff's injury; and (4) Plaintiff suffered damages as a result of the injury. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing *Paterson v. Deeb*, 472 So.2d 1210, 1214 (Fla. 1st DCA 1985)).

In a negligent security action, the possibility of a criminal act by a third-party is the avoidable risk of harm from which a proprietor has a duty to protect invitees. *See Holiday Inns, Inc. v. Shelburne*, 576 So.2d 322, 327 (Fla. 4th DCA 1991). Thus, although the intentional criminal act of an unknown third-person may be an intervening cause of an invitee's injury, if such an intervening cause was foreseeable, then the proprietor's negligence is considered the proximate cause of the invitee's injury notwithstanding the intervening act of another. *Id.*

relationship," there has to be some evidence of foreseeability to give the question to a jury. In this case, however, there is no record evidence from which a reasonable jury could find for Plaintiff.

Relying upon *Stevens v. Jefferson*, 436 So.2d 33 (Fla. 1983) and *Hall v. Billy Jack's, Inc.*, 458 So.2d 760 (Fla. 1984), Plaintiff contends that the foreseeability analysis also implicates the "likelihood of disorderly conduct by third persons in general which may endanger the safety of" invitees. To be sure, "foreseeability is determined in light of all the circumstances of the case rather than by a rigid application of the mechanical rule requiring evidence of prior similar criminal acts against invitees on the property." *Foster*, 674 So.2d at 844. In discounting the existence of a "mechanical rule," courts have concluded that evidence of past criminal conduct on the premises can be sufficient to create a genuine issue of material fact as to the question of foreseeability if that past crime involves a type of conduct that is indicative of the crime that injured the plaintiff. *See id.* at 844-45 (citing and discussing, *inter alia, Nicholls v. Durst*, 579 So.2d 386 (Fla. 5th DCA 1991) and *Orlando Executive Park, Inc. v. P.D.R.*, 402 So.2d 442 (Fla. 5th DCA 1981)).

### B. *Plaintiff Has Not Proffered Any Evidence that the Shooting Was Foreseeable*

The evidence Knight offers, however, does not raise a genuine issue of material fact as to the foreseeability of a criminal attack on invitees to the Shore Club Hotel. Foremost, Knight concedes that the Shore Club Hotel is located in a low crime business area, and is a high-end, celebrity destination. [DE 79, Ex. J at 2]. Moreover, there is no evidence of any prior violent crimes occurring at or near the Shore Club Hotel. There also is no evidence that West or G.O.O.D. ever held a party in which a criminal act occurred. Thus, any foreseeable violence was not based upon the personal experience of any of the Defendants in hosting events.

Indeed, based solely on hearsay, Plaintiff argues that the Party attracted "a cadre of gun toting thugs" [DE 78 at 8], which created an environment in which a shooting was reasonably foreseeable.[8] Based upon his

---

[8] Knight's foreseeability evidence rests upon his testimony and the opinion of his expert, who opined that the nature of the event made criminal activity reasonably foreseeable: "the criminal history of many artists/celebrities on the invite list, the history of violence (Tupac and Biggie homicides) involving performers and producers invited to the event, the propensity for violence, esp. weapons and the bravado associated with violent lyrics and graphic videos of numerous celebrities on the invite list." [DE 79, Ex. J at 3-4]. While Knight's expert is an expert in safety and security involving crimes against the person, she testified she is not an expert on the rap and hip hop industry, and is not familiar

characterization of rap and hip hop artists as violent individuals, Knight contends – but provides no record evidence to support such a claim – that the Party was "full of guests with the propensity for violence," such that the Defendants knew or should have known of a dangerous condition at the Shore Club Hotel. According to Knight, there were rival Crips and Bloods gang members at the Party [DE 80 at 6]; "there were prior police altercations and gun concerns at the Rap/ Hip Hop Source Awards in Miami Beach in 2001, past violent Rap Hip Hop Memorial Day weekends" [DE 80 at 9]; and the Shore Club had used metal detector wands at an MTV New Year's Eve event in December, 2001. [DE 78, Ex. D at 34:8-35:10].

Aside from evidence that rapper "Game" attended the Party [DE 80, Ex. D at 98-99], there is no evidence identifying any rap or hip hop artist who attended the Party. Furthermore, there is no evidence that Game, or any rap or hip hop artist posed a known danger to others. Indeed, there is only one attendee for whom there is record evidence of a criminal history – Plaintiff. [DE 67, Ex. I at 4 (parole violation, assault & battery)]. In fact, the only evidence of a gang presence at the Party is a statement by the investigating police officer that he heard Plaintiff is a member of the Crips.[9] Additionally, the evidence of purported gun concerns at the Source Awards in 2001 is that police used pepper spray on large crowds that at times became violent. [DE 78, Ex. A at 106:7-12]. As for the violent Memorial Day weekends, Sergeant Morgalo testified at deposition that there have been violent crowds and noted that there was a double murder in 2006, one year after the Party, that involved the "crew" of a rapper. Finally, although the Shore Club Hotel used metal detector wands once, at an MTV New Year's Eve event held

---

with the rap and hip hop industry. [DE 79, Ex. H at 101:4-103:9]. Furthermore, the facts on which Knight's expert based her opinion on the expectation of danger due to the presence of rap and hip hop artists at the Party admittedly rest on her review of the allegations in the Amended Complaint and Plaintiff's deposition testimony. [*See* DE 79, Ex. J at 4].

[9] Although inadmissible hearsay, this is representative of the evidence Plaintiff has put in the record. Knight does not aver that he was a member of the Crips, only that an unspecified individual at the L.A. County Sheriff's Deputy office told a Miami Beach Police Officer that Knight is a member of the Crips. Presumably Plaintiff would have been able to provide competent evidence of his own affiliation with a particular organization.

Furthermore, there is no record evidence that any Bloods gang member attended the Party. Nevertheless, Plaintiff alleges that Game is a Bloods gang member, however, the deposition testimony he cites does not support this allegation. For example, when the investigating police officer Sergeant Morgalo was asked if "there was some kind of altercation between the Game and Suge Knight in the past," he responded "I received information that there had been some type of altercation. I was never able to confirm it." [DE 80, Ex. D at 98-99]. Sergeant Morgalo, however, did not describe Game as a Bloods gang member.

four years prior to the Party, the wands were used due to heightened security measures in place following the September 11 terrorist attacks and not the type of guest expected at the event. [DE 78, Ex. D at 34:8-35:10].

Notwithstanding the absence of any record evidence to support his assertions, Knight attempts to paint a portrait of violence.[10] However, aside from the twenty-nine (29) security guards at the Party, the only record evidence of attendees at the Party are Plaintiff, Game, Hulk Hogan and his family, Jessica Alba, and Kanye West. Plaintiff introduced no evidence that these or any other invitees had a propensity for violence. In the absence of proof that Defendants had actual or constructive notice of foreseeable criminal activity, Defendants may not be held liable for the attack on Knight because, as a matter of law, the shooting was not foreseeable.

## IV. CONCLUSION

Knight concedes that a proprietor is not an insurer of an invitee's safety, yet he attempts to do just that, have his safety insured. The only "evidence" of criminal or gang elements is the hearsay testimony of a police officer that Plaintiff is a Crip. However, after more than a year of discovery Plaintiff fails to provide admissible evidence of his own gang affiliation, let alone that of any invitee at the Shore Club Hotel on the night he was shot. Plaintiff has not provided any record evidence that guests who attended the Party had criminal convictions, were involved in any type of gang related altercations, or otherwise had a propensity for violence (save for perhaps Plaintiff himself). In sum, there is no evidence from which a jury could conclude that it was foreseeable that a shooting would occur at the Party. Therefore, it is

---

[10]Plaintiff claims that (1) it was "a party for a cadre of gun toting thugs" [DE 78 at 8]; (2) "violence and guns are a part of the Rap Hip Hop subculture" [DE 78 at 8];(3) the Party "was full of guests with the propensity for violence" [DE 80 at 9]; and (4) there were "rival crip and blood gang members in the same room with a long[,] well[-]known history of past and current violence and gun use" at the Party [DE 80 at 8]. There is no record evidence, however, to support any of these assertions. Likewise, Knight misstates the record when he simply claims that "a person affiliated with or attending the WEST event was shot at and the bullet went through the individual's baseball cap." [DE 78 at 4]. When Sergeant Morgalo was asked whether the individual who was shot "was part of a hip hop entourage or artist," he stated "I don't think it was part of a hip hop entourage, there was some affiliation. It wasn't just the average Joe walking down the street that had a bullet go through [h]is baseball cap." [DE 78, Ex. A at 108:25-109:5]. While Plaintiff's counsel is a wonderful creative writer, to get past a motion for summary judgment, Plaintiff must come forward with facts that are supported by record evidence to show that there is a genuine issue for trial.

ORDERED that

(1) Defendants Morgans Hotels Group Management, LLC, Philips South Beach, LLC, Philips South Beach, LLC's Motion for Summary Judgment [DE 66] is GRANTED.

(2) Defendants Getting Out Our Dreams, Inc. and Kanye Omari West's Motions for Summary Judgment as to Counts 1 and 2 of Plaintiff's Amended Complaint [DE 68, 69] are GRANTED.

(3) Defendants Getting Out Our Dreams, Inc. and Kanye Omari West's Motion for Partial Summary Judgment as to Plaintiff's Claim for Lost Wages [DE 70] is DENIED AS MOOT.

(4) This CASE IS CLOSED.

(5) All pending motions not otherwise ruled upon are DENIED AS MOOT.

(6) By separate order the Court shall enter judgment in favor of the Defendants and against the Plaintiff, who shall take nothing from this action.

DONE and ORDERED in Miami, Florida, this 4th day of November, 2010.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    Judge O'Sullivan
       Counsel of Record